# Patterson, *et al. v.* Hannan, *et al.*

## *Bill to Reform Deed.*

(Decided March 2nd, 1907. 43 So. Rep. 192.)

1. *Reformation of Instruments; Deeds; Evidence.*—In a suit to reform the description for mistake in a deed the burden is on the complainant to establish the mistake by clear and convincing proof.
2. *Same; Evidence; Findings.*—Evidence in this case stated and examined and held to show that the description describing the south boundary of the land conveyed as extending to the center of a certain street instead of to the street was a mistake in fact.

APPEAL from Mobile Chancery Court.

Heard before Hon. THOMAS H. SMITH.

Bill by Patrick C. Hannan and others against R. J. Paterson and others. From a judgment from complainants, defendants appeal. Affirmed.

[Patterson, et al. v. Hannan, et al.]

INGE & ARMBRECHT, for appellant.—Until beyond reasonable controversy the mistake is made to appear, the writing must remain the sole expositor of the intent and agreement of the parties.—*Smith v. Allen*, 102 Ala. 408; *Hertzler, Jr. v. Stevens*, 114 Ala. 337; *Hinton v. Citz. Mut. Ins. Co.*, 63 Ala. 488; *Turner v. Kelly*, 70 Ala. 85; *Campbell v. Hatchett*, 55 Ala. 548; *Tyson v. Hatchett*, 100 Ala. 52. The burden is on the complainant to show by evidence that is clear, exact, convincing and satisfactory that the written instrument does not truly contain the agreement of the parties.—*Trapp v. Moore*, 21 Ala. 697; *Guilmartin v. Urquhart*, 82 Ala. 570; *Orlando v. Dexter*, 87 Ala. 576; *Burnell v. Morris*, 106 Ala. 349; *Mitchell v. Capital City Ins. Co.*, 110 Ala. 583; *Moore v. Tate*, 114 Ala. 584; 2 Pomeroys Equity Jurisprudence Section 859; Storeys Equity Jurisprudence (12th Ed.) Section 157; *Campbell v. Hachett*, 55 Ala. 548.

L. H. & E. W. FAITH, for appellee.—The presumption is that the parties intention was to convey the land they own, so the deeds, option and letter were admissible in evidence for the purpose of aiding the court in arriving at the intention of the party as to what lands were being bought and sold.—*Sledge v. Scott*, 56 Ala. 202; *Chambers v. Ringstall*, 69 Ala. 140. Books of account kept by the deceased clerk, and all other entries or memoranda made in the course of business or duty, by any one who would at the time have been a competent witness to the fact which he registered are admissible evidence. —*Bank v. Planett*, 37 Ala. 226; *Batre v. Simpson*, 4 Ala. 305; *Lily v. Larkin*, 66 Ala. 120; *Elliott v. Dykes*, 78 Ala. 157; *Sands v. Hamil*, 108 Ala. 624; Section 1809 Code 1896.

SIMPSON, J.—The bill in this case was filed by the appellees (Complainants) for the purpose of having reformed a deed made by Hannan, Deegan, and Allen to the appellants, dated March 30, 1900. Said deed conveyed certain property in Mobile, Ala., described therein as bounded "on the north by Palmetto street, on the east by the channel of Mobile river, on the south by the line

of the center or middle of Charleston street, and on the west by Water street." The defendants never got possession of that part of said Charleston street between its northern limit and the center of said street, it being held adversely by other parties; and they instituted a suit in the city court at Mobile against appellees (complainants) to recover damages for breach of warranty in said deed as to said piece of land. The bill in this case was filed to enjoin said suit and to reform said deed, so as to describe said property therein mentioned as bounded "on the south by Charleston street," in place of the "center or middle of Charleston street," claiming that the description of said southern boundary is incorrect as it appears in the deed, and that it occurred by a mistake of the scrivener who drew the deeds, and never was discovered by said complainants until August 31, 1905, when they received a letter from defendants' attorneys, claiming damages for said breach of warranty in said deed. The writ of injunction was issued, and on final hearing of the case the decree of the court granted the prayer of the bill and reformed the deed. Deegan is dead, and none of the other parties to the transaction, or of the witnesses examined, are able to state who drew up the deed, nor what instructions were given to the draftsman.

Prior deeds of conveyance were introduced in evidence, showing that the complainants never owned any part of Charleston street, but that the property as conveyed to them was described as bounded on the south by Charleston street. Wm. Deegan, who is dead, was the manager of the property, and much seems to have been left to him in regard to the transaction, while the details seem to a great extent to have passed out of the minds of the other parties. The evidence, however, establishes the facts that the negotiations commenced by appellants applying to the firm of Sage, Burgett & Co., real estate brokers, telling them that they needed more wharf property, and that Sage, of that firm, later informed them that they had an option on the "Hitchcock Press" property. This option is in evidence. It is made March 16, 1900, by Allen, Deegan & Hannan to Leatherbury & Paterson, and it describes the property as "the

vacant ground on the river front, bounded on the north
by Palmetto street, on the west by Water street, on the
south by Charleston street, and on the east by the chan-
nel of Mobile river, having a front of 350 feet, more or
less, on the Mobile river"; the price being $35,000, $10,-
000 cash on 1st of November, 1900, and balance in equal
payments of one, two, and three years after date, with
interest at 6 per cent. Said option goes on to provide
that if said Leatherbury & Paterson should accept the
option, and the trade be consummated, they would lease
the property from the 1st of April, 1900, to the 1st day
of November following, at the monthly rent of $150.
Two copies of the option appear in the record, as Ex-
hibit A and B to the deposition of Burgett, of the firm
of Sage, Burgett & Co. On one of them is the endorse-
ment in Burgett's handwriting, but unsigned, as fol-
lows: "We accept the above proposition provided the
interest is made 5 per cent. and the deferred payments
are made on or before one, two, three, and four years,
and provided the title is satisfactory to our attorneys.
Mobile, March 24th, 1900." On the other copy are in-
dorsements in figures, testified by Burgett to be very
much like Deegan's figures and pencil memoranda, tes-
tified to be in Deegan's handwriting. The figures seem
to be calculations showing the difference between 6 per
cent. and 5 per cent., and showing the total amount and
the division into four notes, in place of three, as to the
deferred payments. Between these figures is written in
pencil, "Consummate as within, at," and the paper is
indorsed: "Option on Hitchcock's wharf to Leatherbu-
ry & Paterson, March 16th to 23rd, 1900. $35,000.00."
The witness Burgett does not remember why the paper,
Exhibit A, and his indorsement, were not signed, but
supposes that either there was another paper or it was
closed verbally. The witness Burgett does not remem-
ber that anything was said about changing the descrip-
tion of the southern boundary to the center of the street.
It appears, also, that appellants did lease the premises
from the 1st of April to the 1st of November, 1900 (said
lease is attached to the deposition of Burgett as Exhibit
C), at $150 per month, and in said lease the property
is described, just as it is in the option, as bounded "on

the south by Charleston street. The next writing in evidence is a letter, dated "Mobile, 3—4—1900," addressed to Sage, Burgett & Co., and signed by Leatherbury & Paterson, stating that they will give $35,000 for the property, $10,000 payable November 1, 1900, balance in four equal yearly payments, with interest at 5 per cent., describing the property, just as it is in the option, as bounded "on the south by Charleston street," and "having a front of 350 feet more or less," and agreeing to lease on the terms mentioned in the option. It appears, also, that said Leatherbury & Paterson employed the firm of L. H. & E. W. Faith (lawyers) to investigate the title to the property, to wit, the "Hitchcock Press" property, which seems to be the name given to it in all of the negotiations, except that it is once or twice called "Hitchcock Wharf." Said lawyers furnished a written opinion, which is in evidence, in which the property is described, exactly as it is in the option, as bounded on the South by Charleston street. It is shown that "Hitchcock Press," or "Hitchcock Wharf," property has nveer extended into Charleston street, that it is 150 feet deep, and that to extend it into the middle of Charleston sreet would make it 371 1-2 feet, or thereabout.

On the other hand, the defendants offered in evidence the receipt, signed by Geo. E. Sage, dated March 30, 1900, which Sage testified was handed to Deegan, acknowledging the receipt of the ded and notes, which are to be held by Sage in escrow until the November cash payment is made, in which receipt the property is described as bounded on the "south by line in center or middle of Charleston street," and nothing is said about the number of feet. The only other documentary evidence on this subject is the deed itself, which, as before stated, describes the property in the same way. No witness is able to state who authorided this sudden change in the description of the property, or that any instructions were given to the scrivener to so describe it; but Paterson, one of the defendants, testified that he does not recall any conversation about changing the boundary, but that he had several conversations with Hannan, one of the complainants, while viewing the property, in which said Hannan, in reply to Paterson's

assertion that the price was high, told him that they would get down to the center of the street, and that they could remove the fence which was along the north line of the street whenever they desired. Hannan denies ever having any such conversation with Paterson, and insists on it that complainants never claimed to own to the center of the street, and never would have signed the deed if he had known that it was described in that way. The option, the lease, and the deed from Winston Jones to Hannan & Deegan (Exhibit D) were found among the papers of Deegan, deceased; but the receipt of Sage was not. The witness Sage, who seems to have had more to do with the negotiations between the various parties than any one else, says that he does not remember any conversation about changing the boundary to the center of the street; but it seems to him that something was said by someone, but he does not remember who it was, nor what was said.

In view of the fact that the recollection of all the parties seems to be fragmentary, much must depend upon the written evidence that has been left, including memoranda, which, though, strictly speaking not evidence, are admissible as circumstance to aid the court in ascertaining the intentions of the parties; and, taking it altogether, although we recognize the burden that rests on the complainant to make clear proof; yet we think it is perfectly evident that the fixing of the southern boundary at the center of Charleston street, in place of at its northern line, was a mistake, and that the chancellor committed no error in his decree. We are not to be understood as intimating that a conveyance of a piece of land bounded on the south by a certain street would not convey it to the center of the street, subject to the public easement, nor do we touch upon the question of the right of the holder of the property to have the street opened; these questions not being presented to pleading or the briefs of the parties.

The decree of the court is affirmed.

TYSON, C. J., and HARALSON and DENSON, JJ., concur.